UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of

    EVANGELOS MARINAKIS

For an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding.

Civil Action No. 24-Misc. _____

## DECLARATION OF CHRISTOPHER SCOTT IN SUPPORT OF
## *EX PARTE* APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

I, Christopher Scott, declare as follows:

1. I am a member of the law firm Slateford based in London, counsel to Evangelos Marinakis ("Applicant"), and am duly admitted to practice in England and Wales.

2. I make this Declaration in support of Applicant's petition pursuant to 28 U.S.C. § 1782 (the "Application"), seeking an order authorizing intermediary bank discovery for use in a pending civil proceeding before the High Court of Justice, King's Bench Division in the United Kingdom (Claim No. KB-2024-001325) (the "English Proceeding") from the following banking and financial institutions located in this District: Citibank, N.A.; The Bank of New York Mellon; Bank of America, N.A.; Barclays Bank PLC; BNP Paribas USA; Commerzbank AG, New York Branch; Deutsche Bank Trust Co. Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; Société Générale, New York Branch; Standard Chartered Bank USA; UBS AG; Wells Fargo Bank, N.A.; and The Clearing House Payments Company L.L.C. (the "Respondents").

3. I am fully authorized to make this Declaration by Applicant. I am fully familiar with the facts of the English Proceeding. Unless stated otherwise, the statements herein are based on my personal knowledge from my involvement in the English Proceeding on behalf of Applicant, as well as my review of relevant documents.

**Relevant Parties and Background**

4. Applicant is a Greek national. He is a successful businessman who is particularly well-known since 2017 for his involvement in and ownership of Nottingham Forest Football Club, through NF Football Investments Ltd, which is a hugely popular and well-supported professional association football club that competes in the English Premier League, the top tier of English football. Through his companies, he is the majority owner of Nottingham Forest Football Club, attending games and other events as a prominent public figurehead for the club.

5. The English Proceeding arises out of a coordinated, anonymous media smear campaign targeting Applicant in his capacity as owner of Nottingham Forest (the "Smear Campaign"). The Smear Campaign began in early October 2023 and was organized by known and unknown individuals (the "Co-Conspirators") who hired a Texas-based digital marketing agency, Harris Media LLC ("Harris Media"), to disseminate false and defamatory allegations about Applicant through at least March 24, 2024.

6. In November and December 2023, Harris Media launched defamatory publications and advertisements by way of a website, various social media accounts, including a video page on YouTube and an X (f/k/a Twitter) account, and two mobile billboards driven by vans outside Nottingham Forest's stadium in Nottingham, England.

7. The Smear Campaign was deliberately designed to conceal the identity and involvement of the Co-Conspirators, who anonymized the publications on various platforms and created the false impression that a grassroots, fan-led campaign group was funding the campaign (i.e., with advertisements stating: "Paid for by Nottingham Forest Fire"). The known Co-Conspirators also hid any ties to the campaign by using various entities as conduits for payments and transactions relating to the Smear Campaign.

8. In December 2023 and January 2024, prior to initiating the English Proceeding, Applicant brought two Norwich Pharmacal applications in the English courts against (i) Twitter International Unlimited Company, GoDaddy Inc. Domains by Proxy LLC, Google LLC, and WP Engine Inc., and (ii) Promogroup Limited, the company that booked the van for the first mobile billboard. This equitable remedy compels third-party disclosure from parties indirectly involved in the wrongdoing. Information from this disclosure revealed that Harris Media was the entity running the website and X account that were used in the Smear Campaign.

9. On March 4, 2024, Applicant obtained a Texas state court disclosure order against Harris Media to identify the client behind the Smear Campaign.

10. This disclosure resulted in Harris Media releasing emails, payment invoices, and bank statements, which provided details regarding payments made into Harris Media's Bank of America account from four different account numbers.

11. The payment invoices and emails identified four co-conspirators – namely, two individuals that orchestrated the Smear Campaign and two conduit entities used to facilitate wire transfer between and among the co-conspirators and to pay Harris Media for its services. These four individuals and/or entities are also the named defendants in the English Proceeding (the "English Defendants"):

    a. Irini Karipidis ("Karipidis"), Applicant's business rival and the apparent ringleader behind the Smear Campaign, who also resides in Greece;

    b. Amani Swiss (Cyprus) Limited ("Amani Swiss"), a limited liability company incorporated in Cyprus and affiliated with Karipidis (the company's president and managing director);

3

  c. Ari Harow ("Harow"), an Israeli political consultant, who introduced Karipidis to his contacts at Harris Media and was on the various emails where Karipidis instructed Harris Media on the timing and implementation of various defamatory advertising in the Smear Campaign;

  d. Sheyaan Consulting Ltd ("Sheyaan Consulting"), an Israeli company affiliated with Harow, who is identified as the company's CEO.

12. On April 26, 2024, Applicant initiated the English Proceeding, bringing claims for defamation and unlawful means conspiracy against the English Defendants. Attached as **Exhibit 1** is a true and correct copy of the Particulars of Claim, dated April 26, 2024, filed in the English Proceeding (the "Particulars of Claim").

13. The disclosure obtained from Harris Media revealed that on October 13, 2023, Harris Media issued an invoice for "1st Month Consulting." Attached as **Exhibit 2** are true and correct copies of the invoices and bank statements produced by Harris Media. *See* Ex. 2 at 1.

14. Emails from the disclosure show that in early November 2023, Karipidis sent materials and instructions to Harris Media to be published as part of the Smear Campaign. Attached as **Exhibit 3** are true and correct copies of various emails produced by Harris Media. *See* Ex. 3 at 5–8.

15. Throughout November and December 2023, Karipidis continued sending additional materials for use in the Smear Campaign. *See* Particulars of Claim at ¶ 97.3.

16. On November 8, 2023, Harris Media registered an X account, which published more than 200 posts making false and defamatory allegations against Applicant, and registered the domain name of a website (the "Website"), which published four defamatory articles about Applicant on November 9, 2023. *Id.* at ¶¶ 7–8. On November 27, 2023, Harris Media created a

4

YouTube Channel, which published six videos encouraging viewers to visit the Website. The six videos were published between November 27 and December 20, 2023. *Id.* at ¶ 9.

17. In December 2023, Karipidis corresponded with Harris Media about organizing mobile billboards by using an airplane banner as well as an advertising van. *Id.* at ¶¶ 97.3.5–97.3.6; *see also* Ex. 3 at 1–4.

18. On December 23, 2023 and January 7, 2024, two mobile billboards, driven by vans around Nottingham Forest's stadium on game days, published defamatory statements about Applicant and encouraged its audience to visit the fraudulent "fan" Website with links to further defamatory materials. *See* Particulars of Claim at ¶¶ 62, 66.

19. On January 8, 2024, Karipidis sent Harris Media an email with the subject line "Update for January," discussing the January 7, 2024 mobile billboard and asking for updates on "the plane and the bus stations." *Id.* at ¶¶ 97.3.10.2– 97.3.10.3. The email also referred to further use of the YouTube Channel and the possibility of using Meta for new content in the coordinated Smear Campaign. *Id.* at ¶¶ 97.3.10.4– 97.3.10.5.

20. Harris Media disclosed evidence of two payments, which show how Karipidis and Harow concealed their involvement in the Smear Campaign by using Swiss Amani and Sheyaan Consulting to pay Harris Media's fees:

> a. On October 13, 2023, Harris Media issued an invoice to Amani Swiss requesting payment in the sum of EUR 29,945 be sent to account number 004780771859 at Bank of America, with payment made out to Harris Media, LLC. *See* Ex. 2 at 1. On October 18, 2023, Amani Swiss initiated a wire transfer of EUR 29,945 via Optima Bank S.A., from account number GR25034002200220. *See id.* at 1-2.

  b. On December 14, 2023, Sheyaan Consulting initiated a wire transfer of USD 25,000. The wire transfer confirmation does not include the recipient of the transfer; however, the document was part of the Harris Media disclosure and appears to be a record from Harris Media's bank. *See id.* at 3. While some further evidence regarding the recipient of this transfer has been advanced in witness evidence, this is not yet a matter of public record.

21. Applicant believes that Harris Media's disclosure of only two transactions – one in October for "1st Month Consulting" and the other in early December 2023 – is not comprehensive of all transactions made in relation to the Smear Campaign.

22. Harris Media did not provide details of any transactions relating to the mobile billboards and additional social media advertisements during the course of the Smear Campaign even though these projects were discussed in several email communications between Karipidis and Harris Media in late December 2023 and early January 2024.

**Applicant's Request for Discovery Pursuant to 28 U.S.C. § 1782**

23. Applicant seeks assistance from the United States District Court for the Southern District of New York to obtain relevant and probative documentary evidence in the possession and control of the Respondents.

24. I am advised by New York counsel that the Respondents are commonly known to act as correspondent, intermediary, or otherwise clearing house banks for U.S. dollar-denominated wire transfers between international banks and also passing from domestic to international banks, and vice versa.

25. Based on the records that Applicant has managed to obtain to date, Applicant has identified individuals, entities, and bank accounts (the "Discovery Targets") that orchestrated the

Smear Campaign and facilitated transactions relating to the campaign that will be relevant, important, and useful in the pending English Proceeding. The entities and individuals in question are: (i) Karipidis; (ii) Harow; (iii) Amani Swiss; (iv) Sheyaan Consulting; (v) Account Number 004780771859, the Bank of America, N.A. account associated with Harris Media (the "Bank of America Account"); (vi) Account Number GR25034002200220, the Optima Bank S.A. account associated with Amani Swiss (the "Optima Bank Account"); and (vii) Account Number GR1002602310000030201118136, the Eurobank S.A. account associated with Amani Swiss (the "Eurobank Account").

26. Applicant has good cause to believe that further payments were made, both into and out of Harris Media's Bank of America account to conduct the Smear Campaign and pay for extensive advertisements (e.g., mobile billboard, discussions of airplane banner and bus stop ad). The two transactions disclosed by Harris Media do not capture the full scope and scale of the advertising payments that should be involved in a campaign of this size. Applicant also believes that Harris Media has not provided the details of every transaction in relation to the Smear Campaign and wishes to identify all other individuals and entities involved in order to add them as parties in the English Proceeding.

27. Applicant therefore seeks to obtain meaningful information from the Respondents, all of which are in the business of processing wire transfers and payments in New York City and will have processed wire transfers and payments relevant and probative to advance Appellant's defamation and unlawful conspiracy claims in the English Proceeding. Specifically, for the limited period beginning October 1, 2023 to March 31, 2024, Applicant seeks evidence of intermediary bank transfers, all of which evidence is located in this District, including:

    a. All documents in the possession and control of Respondents as follows:

    (i) copies of all wire transfer records in the possession or control of the Respondents processed by the Respondents, as intermediary or correspondent banks, where any of the Discovery Targets is an originator, beneficiary, or is otherwise referenced in the wire transfer;

    (ii) identify bank accounts in the name of and /or held beneficially for any of the Discovery Targets, and provide the full records thereof, specifically including copies of present and historical account balance information, and records of incoming and outgoing payments; and

    (iii) identify accounts, loans, lines of credit, or other funding arrangements to any of the Discovery Targets, and provide full records thereof; and

  b. All records in the possession and control of Bank of America, N.A. relating to monetary transfers into and out of the Bank of America Account related to the Discovery Targets.

28. I am advised by New York counsel that the Respondents from whom discovery is sought reside or are found in the Southern District of New York within the meaning of 28 U.S.C. § 1782.

29. The Respondents are not expected to become parties to the English Proceeding, and as such, this Application constitutes the most practical and timely method for obtaining the evidenced needed for use therein. None of the information requested has been made available to Applicant. The need for the Order authorizing discovery from the Respondents is therefore critical because, absent the instant Application, the evidence necessary to fully adjudicate the English Proceeding would likely remain outside the reach of the English Courts within the necessary timeframe.

30. Further, there is no indication that the English court would not be receptive to the documentary evidence sought through the present Application. The Application does not circumvent any proof-gathering rules under English law, and there is no English rule of evidence

8

that would prevent discovery obtained under 28 U.S.C. § 1782 from being used in the English Proceeding.

31. The discovery sought is not intrusive or unduly burdensome because it is limited in scope. Applicant seeks limited records relating to wire transactions for which Respondents were involved as originating bank, beneficiary bank, intermediate or correspondent bank to Clearing House Interbank Payment Systems (CHIPS) or where the Respondents otherwise facilitated interbank fund transfers, or where the Discovery Targets were the recipients or facilitators of transactions in USD, as well as documents related thereto, for the narrow timeframe between October 1, 2023 and March 31, 2024.

32. Under the circumstances, evidence that will be relevant to Applicant's entitlement to relief in the pending English Proceeding has not been made available abroad but is located in the United States in this District.

33. As such, Applicant respectfully requests the Court grant their request for discovery pursuant to 28 U.S.C. § 1782.

I declare under penalty of perjury under the laws of the United States of America, that the following is true and correct to the best of my knowledge and belief.

Dated:     October 17, 2024

_____
Christopher Scott