USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  2/21/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE APPLICATION OF EVANGELOS
MARINAKIS

**REPORT AND**
**RECOMMENDATION**

1:24-mc-485-JGK-HJR

**HENRY J. RICARDO, United States Magistrate Judge.**

**To The Honorable John G. Koeltl, United States District Judge:**

Evangelos Marinakis ("Marinakis" or "Applicant") has filed an application to obtain discovery in aid of a foreign proceeding pursuant to 28 U.S.C. § 1782 (the "Application").  This matter was referred to Magistrate Judge Robin F. Tarnofsky for a Report and Recommendation on November 7, 2024 (Dkt. No. 7).  On November 8, 2024, it was reassigned to the undersigned.  For the reasons described below, the Application should be **GRANTED** in part and **DENIED** in part.

## I.    Background

Marinakis is Greek businessman who is the majority owner of the Nottingham Forest Football Club ("NFFC").  Declaration of Christopher Scott dated October 17, 2024 ("Scott Decl."), Dkt. No. 3, ¶ 4.  Marinakis claims he has been the target of an anonymous smear campaign (the "Smear Campaign") involving social media posts and physical advertisements designed to impugn his reputation in relation to his ownership of NFFC.  *Id.* ¶¶ 5–7.  Accordingly, Marinakis initiated a civil proceeding in the United Kingdom alleging defamation and conspiracy by the perpetrators of the Smear Campaign (the "English Proceeding").  This action is

1

captioned, *Marinakis v. Karipidis, et al.*, Claim No. KB-2024-001325, and was filed in the High Court of Justice, King's Bench Division, in the United Kingdom.  *Id.* ¶ 2.

Through discovery obtained in the English courts before filing the English Proceeding, Marinakis learned that Harris Media LLC ("Harris Media"), a Texas-based digital marketing agency, conducted certain portions of the Smear Campaign. *Id.* ¶ 8.  Marinakis then obtained a Texas state court order requiring Harris Media to provide discovery.  *Id.* ¶ 10.  Harris Media's production of emails, payment invoices and bank statements identified certain individuals and entities allegedly behind the Smear Campaign:  (1) Greek businesswoman Irini Karipidis; (2) Amani Swiss Ltd., a Cyprus company associated with Karipidis; (3) Ari Harrow, an Israeli political consultant; and (4) Sheyaan Consulting Ltd., as Israeli company associated with Harrow.  *Id.* ¶¶ 11, 22.  These individuals and entities are defendants in the English Proceeding and are described in the Application as the "Discovery Targets." *Id.* ¶ 25.[1]

Through this Application, Marinakis seeks authorization to serve document subpoenas on a number of financial institutions suspected of having records of money transfers relating to the Smear Campaign:  Citibank, N.A.; The Bank of New York Mellon; Bank of America, N.A.; Barclays Bank PLC; BNP Paribas USA; Commerzbank AG, New York Branch; Deutsche Bank Trust Co. Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; Société Générale, New York Branch;

---

[1] The "Discovery Targets" also include an account associated with Harris Media at Bank of America, N.A., an account associated with Amani Swiss at Optima Bank S.A., and an account associated with Amani Swiss at Eurobank S.A.  Scott Decl. ¶ 25.

Standard Chartered Bank USA; UBS AG; Wells Fargo Bank, N.A.; and The

Clearing House Payments Company L.L.C. (collectively, "Respondents"). *Id.* ¶ 2.

Marinakis seeks "records relating to U.S. dollar-denominated wire transfers and

payments processed through the Respondents where the Discovery Targets were the

recipients, beneficiaries, or otherwise referenced in wire transfers between one

another." Memorandum of Law In Support of *Ex Parte* Application for Discovery

Pursuant to 28 U.S.C. § 1782 ("App. Mem."), Dkt. No. 5 at 2.[2] He has also

submitted a Proposed Order Granting *Ex Parte* Application for Discovery Pursuant

to 28 U.S.C. § 1782 (the "Proposed Order"), Dkt. No. 6, which identifies additional

categories of materials sought.

## II.    Discussion

28 U.S.C. § 1782 authorizes interested persons to obtain discovery under the

Federal Rules of Civil Procedure for use in a foreign proceeding. Courts considering

applications under Section 1782 should be guided by the "twin aims" of this statute,

which are providing efficient means of assistance to participants in international

litigation in our federal courts and encouraging foreign countries by example to

provide similar means of assistance to our courts. *See In re Malev Hungarian

Airlines*, 964 F.2d 97, 100 (2d Cir. 1992).

An applicant for discovery under Section 1782 must satisfy the following

three statutory requirements:

---

[2] Citations to the Applicant's Memorandum of Law refer to the page numbers at the bottom of the page, not the page numbers automatically generated by the ECF system.

> (1) the person from whom discovery is sought resides (or can be found) in the district of the district court to which the application is made,
>
> (2) the discovery is for use in a proceeding before a foreign tribunal, and
>
> (3) the application is made by a foreign or international tribunal or by any interested person.

28 U.S.C. § 1782.  Even if these three statutory requirements are met, a district court has considerable discretion in deciding whether to grant an application under Section 1782.  The Supreme Court has provided four factors to be considered in the exercise of this discretion:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding,"
>
> (2) "the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance,"
>
> (3) whether the Section 1782 petition "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States," and
>
> (4) whether the discovery sought is "unduly intrusive or burdensome."

*Intel Corp. v. Advanced Micro Devices*, 524 U.S. 241, 264-65 (2004)

### A.    Statutory Requirements Under Section 1782

Beginning with the three statutory requirements for a Section 1782 application, Applicant clearly satisfies requirements (2) and (3).  Starting with requirement (2), Applicant states that the requested discovery is "for use" in a proceeding before a foreign tribunal because it would enable him to identify

participants in the Smear Campaign and to understand how it operated, which would help him to present his case more effectively in the English Proceeding.  Scott Decl. ¶¶ 26–27, 32.  This showing is sufficient to satisfy requirement (2).  *See Mees v. Buiter*, 793 F.3d 291, 301 (2d Cir. 2015) ("We therefore hold that Mees has satisfied § 1782's "for use" requirement by showing that the materials she seeks are to be used at some stage of a foreign proceeding that was within reasonable contemplation at the time of the proceedings below.").

As to requirement (3), Marinakis is a party in the English Proceeding, and is therefore an "interested person" who may invoke § 1782.  Scott Decl. ¶ 12; *Intel*, 542 U.S. at 256.

Requirement (1) is that the person from whom discovery is sought resides or can be "found" in the district where the application is made.  As the Second Circuit has explained, "the statutory scope of 'found' extends to the limits of personal jurisdiction consistent with due process."  *In re Del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019).  In other words, the person from whom discovery is sought must be subject to personal jurisdiction within this District.

In analyzing the Constitutional limitations on the exercise of personal jurisdiction, the Supreme Court has "distinguished between specific or case-linked jurisdiction and general or all-purpose jurisdiction."  *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017).  Specific jurisdiction requires the suit to arise out of or relate to defendant's contacts with the forum.  *See Goodyear Dunlop Tires Operations, S.A.*

*v. Brown*, 564 U.S. 915, 919 (2011).  In contrast, general jurisdiction allows a court to hear "any and all claims" against a defendant.  *BNSF*, 581 U.S. at 413.

As described below, the Application sufficiently alleges that Respondents are subject to specific jurisdiction, at least as to records pertaining to wire transfers, but does not make a sufficient showing that Respondents are subject to general jurisdiction.[3]

### 1.    General Jurisdiction

All 15 Respondents are corporations, limited liability companies, or foreign analogs thereof.  General jurisdiction over corporations is consistent with due process "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014).  The "paradigm" forums in which a corporate defendant is "at home" are the corporation's place of incorporation and its principal place of business.  *Id.* at 118.  The exercise of general jurisdiction is not limited to those forums, and in an "exceptional case," a corporation's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State."  571 U.S. at 139 n.19.

Since *Daimler*, the Supreme Court has clarified that even substantial permanent operations in a state do not render a corporation "essentially at home there."  In *BNSF*, a defendant railroad was not subject to general personal

---

[3] While Marinakis cites cases in which Section 1782 applications were granted as to one or more of these institutions, none of these decisions contains a detailed discussion of personal jurisdiction under Supreme Court's framework described above.  *See* Declaration of Warren E. Gluck dated October 21, 2024 ("Gluck Decl."), Dkt. No. 4, ¶18.

jurisdiction in Montana despite having over 2,000 miles of railroad track and more than 2,000 employees there.  581 U.S. at 414.  Quoting *Daimler*, the *BNSF* court noted that a "corporation that operates in many places can scarcely be deemed at home in all of them."  *Id.*

The Application fails to identify the place of incorporation of any of the Respondents.  Nor does it specify where any Respondent has its principal place of business.   Instead, the Application lists a series of offices that Respondents maintain within this District, but without any supporting factual declaration.  *See* Dkt. No. 1 ¶ 3.  While some of these New York locations are described as "headquarters," New York is plainly not the principal place of business for certain foreign banks, such as UBS AG.  *See SPV OSUS Ltd. v. UBS AG*, 114 F. Supp. 3d 161, 168 (S.D.N.Y. 2015) (finding "this Court lacks general jurisdiction over UBS AG").  Even domestic banks with multiple branches in New York have been found not to be subject to general jurisdiction.  *See Anderjaska v. Bank of America, N.A.*, No. 19-cv-3057, 2021 WL 877558 (Mar. 9, 2021) (finding that Bank of America, N.A. and Wells Fargo Bank, N.A. are not subject to general personal jurisdiction).  Based on the present record, the Application does not provide a sufficient basis to conclude that Respondents are subject to general jurisdiction in this District.

At a conference held by telephone on February 21, 2025, Marinakis confirmed, through counsel, that he elects not to press the argument that Respondents are subject to general jurisdiction at this time, reserving the right to

make such a showing in the future. Accordingly, the Court turns to specific jurisdiction.

### 2.    Specific Jurisdiction

In contrast to general jurisdiction, which allows a court to hear any dispute involving the party before the court, the exercise of specific jurisdiction requires that "there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Bristol-Meyers Squibb Co. v. Superior Ct. of Cal*, 582 U.S. 255, 262 (2017). While most decisions addressing specific jurisdiction arise in the context of determining whether a court can exercise personal jurisdiction over a defendant for purposes of imposing liability, the Second Circuit has explained how this concept applies in the context of a Section 1782 application:

> Translated to account for a § 1782 respondent's nonparty status, we thus hold that, where the discovery material sought proximately resulted from the respondent's forum contacts, that would be sufficient to establish specific jurisdiction for ordering discovery. That is, the respondent's having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all. On the other hand, where the respondent's contacts are broader and more significant, a petitioner need demonstrate only that the evidence sought would not be available but for the respondent's forum contacts.

*In re Del Valle Ruiz*, 939 F.3d at 530. In that case, the Second Circuit found that where the respondent's forum contacts postdated the transaction that was the subject of discovery, this test could not be met because such contacts could not be but-for causes of the availability of the evidence sought. But even for the contact

that predated the events in question, the Second Circuit found the required nexus was lacking because the petitioner's claim and "the bulk of the discovery sought" arose from a separate financial transaction.  939 F.3d at 531.

The Application provides a sufficient basis to conclude that Respondents are subject to specific personal jurisdiction in this District -- at least for purpose of discovery relating to wire transfers that Respondents processed in this District. These records are described in Paragraph 2(A) of the Proposed Order submitted with the Application.  Dkt. No. 6.  Marinakis alleges that Respondents maintain offices in this District where they act as correspondent or intermediary banks for U.S. dollar-denominated wires transfers involving international banks.  *See* Gluck Decl. ¶¶ 12, 13, 16.  The evidence sought consists of "records of U.S.-denominated wire transfers routed through New York City and documents related thereto" that are located in this District.  Dkt. No. 5 at 13 (ECF page numbering).  Accordingly, there is a nexus between Respondents' forum contacts (*i.e.*, their provision of international banking services in this District) and some of the materials sought through the Application (*i.e.*, records of wire transfer transactions involving the Discovery Targets that were conducted through Respondents' offices or branches within this District).  This satisfies the Second Circuit's requirement that the discovery material sought "must proximately result from respondent's forum contacts."  Accordingly, Respondents are "found" within this District for purposes of this portion of the discovery sought through the Application.

However, to the extent Applicant is seeking broader discovery, including the information described in Paragraphs 2(B) and (C) of the Proposed Order, Dkt. No. 6, the Application fails to show a sufficient nexus between the requested materials (*e.g.*, comprehensive information about accounts and credit facilities) and Respondents' activity in this District. At a conference held by telephone on February 21, 2025, Marinakis confirmed, through counsel, that he elects to focus on the wire transfer records at this time, reserving the right to make a further showing as to other types of information in the future.

## B.    The *Intel* Factors

Even where the three requirements set forth in Section 1782 are met, a court is not obligated to provide discovery, but must exercise discretion to determine whether to grant the requested discovery guided by the four factors provided in *Intel*, 542 U.S. 241.

Turning to the first *Intel* factor, the Respondents are not parties, and are not expected to become parties, to the English Action. This weighs in favor of granting the application. Scott Decl. ¶ 29.

Second, given the nature of the foreign tribunal (a court of first instance in a common law jurisdiction) and the character of the proceeding underway (a civil defamation action), there is no apparent reason to believe that the court presiding over the English Action would be unreceptive to this discovery. Scott Decl. ¶ 30. Other decisions in this District have reached the same conclusion in connection with Section 1782 applications seeking discovery for use in English courts. *See, e.g., In re Batbold*, 21-MC-218 (RA) (OTW) 2021 WL 4596536, at *4 (S.D.N.Y. Oct. 6, 2021)

(citing *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 362 (S.D.N.Y. 2014)); *In re JSC BTA Bank*, 577 F. Supp. 3d at 268; *In re Application of Patokh Chodiev*, 21 Misc. 423 (AT), 2021 WL 3270042, at *2 (S.D.N.Y. July 30, 2021).

Third, there is no indication that the Application constitutes an effort to circumvent foreign proof-gathering restrictions or other policies of either the United Kingdom or the United States. *See* Scott Decl. ¶ 30. To the contrary, the English courts granted applications to obtain third-party disclosure relating to this matter even before the English Action was commenced. Scott Decl. ¶ 8.

Fourth, Applicant seeks records over a limited time frame involving seven specified "Discovery Targets." Further, Applicant represents that "Respondents maintain records of wire transfer activity and can easily search for and produce the requested records without burden or significant expense." App. Mem. 5.[4] Construing the Application as limited to records of wire transfers, the requested discovery is not unduly burdensome. Other courts have allowed similar discovery on Section 1782 applications. *See In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 39 (2d Cir. 2017) (summary order) (affirming grant of wire transfer discovery from certain banks located in New York); *In re Application of Hornbeam Corp.*, No. 14-mc-424, 2017 WL 2241522, at *2 (S.D.N.Y. May 22, 2017) (same).

---

[4] Respondents will have an opportunity to object to the subpoenas if these statements about the burden turn out to be untrue.

The Application makes a sufficient showing on the four *Intel* factors to authorize the service of subpoenas for wire transfer records, *i.e.*, the materials described in Paragraph 2(A) of the Proposed Order.  Dkt. 6.

## III.    Conclusion

Because Applicant has satisfied the statutory requirements as well as the *Intel* factors, the Application should be **GRANTED** as to all Respondents with regard to the materials described in Paragraph 2(A) of Applicant's Proposed Order, but **DENIED** as to the materials described in Paragraphs 2(B) and (C) of Applicant's Proposed Order.  This denial should be without prejudice as to Applicant's right to make a future showing that he is entitled to obtain broader discovery.

### PROCEDURE FOR FILING OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable John G. Koeltl, United States Courthouse, 500 Pearl Street, New York, NY 10007. Any requests for an extension of time for filing objections must be directed to Judge Koeltl.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis,*

*Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: February 21, 2025
     New York, NY

Hon. Henry J. Ricardo
United States Magistrate Judge